IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 25-cr-00054-CNS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     LORI ANN KIMBALL,

    Defendant.

---

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT 1
### Money Laundering Conspiracy
### 18 U.S.C. § 1956(h)

1.     From in or about January 2023 and continuing until in or about February 2025, in the State and District of Colorado and elsewhere, defendant LORI ANN KIMBALL knowingly combined, conspired, and agreed with a co-conspirator to knowingly engage and attempt to engage in monetary transactions, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, specifically, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1957(a).

**MANNER AND MEANS OF MONEY LAUNDERING CONSPIRACY**

Acting inderpendently, KIMBALL and a co-conspirator carried out the

conspiracy using the following manner and means:

2. Victims of pig butchering schemes across the United States mailed cash or checks or wired money to KIMBALL. A pig butchering scheme involves use of a fictitious identity to cold-contact a victim, such as via a social media or dating application, establishing a relationship and building trust with the victim by continuing to message over days, weeks, or months, and then concocting a narrative to induce the victim to send money in the form of wire transfers, checks, or virtual currency.

3. When KIMBALL received cash or a check from a victim, KIMBALL would deposit the money of a value greater than $10,000 in her bank accounts.

4. After the money was in KIMBALL's bank accounts, she transferred or attempted to transfer the money to cryptocurrency accounts through online wire transfers of a value greater than $10,000 from Colorado to other states.

5. In her cryptocurrency accounts, KIMBALL purchased cryptocurrency of a value greater than $10,000, including bitcoin, with the fraud proceeds.

6. KIMBALL transferred her bitcoin shares of a value greater than $10,000 to the digital wallets provided by a co-conspirator.

7. KIMBALL's accounts were frequently closed by banks and cryptocurrency exchanges. As a result, KIMBALL opened dozens of new bank and cryptocurrency accounts so that she could continue to move fraud proceeds each time an account was closed. During her involvement in the conspiracy, KIMBALL utilized at least 20 bank accounts and at least 9 cryptocurrency accounts.

8. During the conspiracy, KIMBALL was warned by third parties, including law enforcement, that she was engaged in illegal financial transactions but continued to engage in such transactions. For example, after being warned by law enforcement about the nature of the conduct, KIMBALL transferred more than $3,491,000 she received from pig butchering victims to cryptocurrency accounts and eventually to cryptocurrency wallets held by other individuals.

9. After banks repeatedly closed her individual bank accounts, KIMBALL took steps to open business banking accounts to transfer more money to other individuals. For example, KIMBALL created a new business entity, JrLaHart Imports, which she planned to use to create business banking accounts.

10. Before closing accounts, banks and cryptocurrency exchanges informed Kimball of the suspicious nature of transactions and asked Kimball questions about the purpose of accounts and the reasons for specific transactions.

11. KIMBALL provided false information to banks and cryptocurrency exchanges to conceal and disguise her activities, including the nature, location, source, ownership, and control of funds. As an example, on March 8, 2024, KIMBALL falsely told the sFox crypto trading platform that she wanted to open an account to trade bitcoin of at least $200,000 monthly, all of which would come from KIMBALL's own income, investments, and retirement. At the time of this false statement, KIMBALL knew the money came from other third parties, and further knew that she was not engaged in bitcoin trading. Instead, she knew that she purchased bitcoin for the purpose of transferring the bitcoin shares to other

individuals.

12. When withdrawing money from bank accounts to move to other bank accounts under her control, KIMBALL asked banks to provide multiple checks of a value greater than $10,000 rather than a single check, which allowed KIMBALL to deposit the checks at different times and different banks to avoid raising suspicions.

13. KIMBALL visited multiple ATMs, bank locations, and money transfer platforms to deposit and withdraw money, often conducting multiple financial transactions in a single day to transfer money rather than conducting all at once from the same location or account, again to avoid raising suspicions.

14. As part of the conspiracy, KIMBALL made transfers up to her daily limit to cryptocurrency exchanges, regularly checking the status of her accounts and transaction limits to avoid exceeeding transaction limits.

15. When KIMBALL ran out of available bank accounts based on closed or burned accounts, a co-conspirator directed her to send money of a value greater than $10,000 to other individuals who would be able to launder the funds.

16. KIMBALL made large cash withdrawals of fraud proceeds, including withdrawals of a value greater than $10,000, that she could then deposit at cryptocurrency ATMs, before transferring the fraud proceeds to other digital wallets belonging to overseas individuals.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 2-18
### Money Laundering
### 18 U.S.C. § 1957

17.  The allegations in Paragraphs 2-16 are re-alleged and incorporated as if fully set forth herein.

18.  On or about the dates set forth herein for each count, in the State and District of Colorado, defendant LORI ANN KIMBALL did knowingly engage in and attempt to engage in monetary transactions, in and affecting interstate commerce, in criminally derived property, of a value greater than $10,000, that was derived from specified unlawful activity, specifically, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity, as follows:

| Count | Date | Financial Transaction |
|---|---|---|
| 2 | February 15, 2023 | Wire of $12,000 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 3 | March 10, 2023 | Wire of $42,000 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 4 | July 26, 2023 | Wire of $19,975 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 5 | August 1, 2023 | Wire of $25,000 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 6 | August 2, 2023 | Wire of $100,000 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 7 | August 2, 2023 | Wire of $25,000 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 8 | August 3, 2023 | Wire of $100,000 from Colorado to Crypto.com |

| | | |
|---|---|---|
| | | cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 9 | August 3, 2023 | Wire of $25,000 from Colorado to Crypto.com cryptocurrency account outside of Colorado for purchase of bitcoin. |
| 10 | October 18, 2023 | Wire of $122,000 from Colorado to Gemini Trust cryptocurrency account outside of Colorado. |
| 11 | October 27, 2023 | Wire of $46,000 from Colorado to Gemini Trust cryptocurrency account outside of Colorado. |
| 12 | December 22, 2023 | Attempted wire transfer of $189,995 from Colorado to Kraken cryptocurrency account. |
| 13 | January 12, 2024 | Wire of $19,950 from Colorado to Kraken cryptocurrency account outside of Colorado for purchase of cryptocurrency. |
| 14 | January 18, 2024 | Wire of $18,000 from Colorado to Kraken cryptocurrency account outside of Colorado for purchase of cryptocurrency. |
| 15 | January 19, 2024 | Wire of $19,850 from Colorado to Kraken cryptocurrency account outside of Colorado that was then used to purchase cryptocurrency. |
| 16 | February 7, 2024 | Deposit of $202,190 check at PNC Bank. |
| 17 | February 26, 2024 | Wire of $85,000 from Colorado to Bitstamp cryptocurrency account outside of Colorado that was used to purchase cryptocurrency. |
| 18 | May 8, 2024 | Wire of $18,000 from Colorado to Bakkt cryptocurrency account outside of Colorado. |

All in violation of Title 18, United States Code, Section 1957.

## COUNTS 19-24
**Money Laundering**
**18 U.S.C. § 1956(a)(1)(B)(i)**

19. The allegations in Paragraphs 2-16 are re-alleged and incorporated as if fully set forth herein.

20. On or about the dates set forth herein for each count, in the State and District of Colorado, defendant LORI ANN KIMBALL did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, that is, mail fraud

6

in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and also knowing, while conducting and attempting to conduct such financial transaction, that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

21. KIMBALL conducted a number of financial transactions to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, including:

    a. withdrawing money from banks that began to investigate the source of payments from other individuals, in the form of either cashier's checks endorsed to herself or cash. KIMBALL would then deposit the cashier's checks or cash into another bank or cryptocurrency ATM, which hid from the new bank or cryptocurrency platform that the money originated from individuals other than KIMBALL.

    b. making multiple cash deposits of smaller amounts in close proximity rather than a single deposit in a larger amount. On one occasion, KIMBALL stated she made multiple deposits and deposited only half of the cash at a time because "I'm trying to be careful."

    c. withdrawing cash from bank accounts that froze her ability to

7

    wire funds to her cryptocurrency accounts, which she could then deposit in cryptocurrency ATMs.

  d. closing cryptocurrency accounts and opening new ones as older accounts came under investigation, before shifting all activity to the new accounts.

  e. splitting transactions across multiple platforms to evade daily limits on each platform. For example, when limited by one online cryptocurrency exchange in the amount she could transfer, KIMBALL made online transfers from her bank up to the daily limit but then took further cash withdrawals from the same bank and deposited them in cryptocurrency ATMs operated by CoinFlip or other entities.

  f. requesting banks that closed her accounts to provide cash and multiple cashier's checks in smaller amounts rather than a single check in a larger amount. KIMBALL then deposited the cash and the multiple checks over time and at different banks.

  22. Examples of KIMBALL's efforts to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity occurred on or about the dates set forth below:

| Count | Date | Description of Financial Transaction |
|---|---|---|
| **19** | September 10, 2024 | Cash deposit in the amount of $5,000 in KIMBALL's bank account at FirsTier Bank |
| **20** | September 11, 2024 | Cash deposit in the amount of $5,000 in KIMBALL's bank account at FirsTier Bank |
| **21** | September 13, 2024 | Withdrawal in the amount of $4,000 from KIMBALL's bank account at FirsTier Bank. |
| **22** | September 13, 2024 | Deposit in the amount of $4,000 into CoinFlip ATM. |
| **23** | September 23, 2024 | Withdrawal of Cashier's Check #729019 in the amount of $30,000 from KIMBALL's bank account at FirsTier Bank |
| **24** | September 24, 2024 | Deposit of Cashier's Check #729019 in the amount of $30,000 to KIMBALL's bank account at Huntington Bank |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### FORFEITURE

23. Upon conviction of the violations alleged in Counts 1-24 of this Superseding Indictment, in violation of 18 U.S.C. §§ 1956 and 1957, defendant LORI ANN KIMBALL shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any and all rights, title, and interest in all property involved in the offense and any property traceable to such property, including, but not limited to a money judgment in the amount of value of the property involved in the offense.

24. If any of the property described above, as a result of any act or omission of defendants LORI ANN KIMBALL cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek

forfeiture of any other property of defendant LORI ANN KIMBALL up to the value of the forfeitable property described above.

A TRUE BILL:

Ink Signature on File in Clerk's Office
FOREPERSON


PETER MCNEILLY
United States Attorney

By: *s/ Craig Fansler*
Craig Fansler
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0401
E-mail: Craig.Fansler2@usdoj.gov
Attorney for the United States